UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

SCOTTSDALE INSURANCE COMPANY,
ONETEAM RESTORATION, INC, NAUTILUS
REALTY LIMITED PARTNERSHIP, and DNA
CONTRACTING AND WATERPROOFING,

                     Plaintiffs,

    -v-                                      No. 19-CV-7294-LTS

ACCEPTANCE INDEMINITY INSURANCE
COMPANY,

                     Defendant.

-------------------------------------------------------------X

## MEMORANDUM OPINION AND ORDER

      Scottsdale Insurance Company ("Scottsdale"), OneTeam Restoration, Inc.

("OneTeam"), Nautilus Realty Limited Partnership ("Nautilus"), and DNA Contracting and

Waterproofing ("DNA" and, collectively, "Plaintiffs") brought this action seeking a declaratory

judgment and damages based on Acceptance Indemnity Insurance Company's ("Acceptance")

alleged breach of obligations under an insurance policy issued by Acceptance to non-party

Miranda Contracting Corporation ("Miranda"), under which OneTeam, Nautilus, and DNA are

alleged to be additional insureds.

         Plaintiffs now move for partial summary judgment pursuant to Federal Rule of

Civil Procedure 56 (docket entry no. 72 (the "Motion")), seeking a declaration: (a) that

OneTeam, Nautilus, and DNA are entitled to additional insured coverage on a primary and non-

contributory basis under the relevant Acceptance insurance policy; (b) that Acceptance is

required to reimburse defense costs incurred in the underlying, consolidated state court action;

(c) that, due to Acceptance's failure to issue a disclaimer to the Plaintiffs, Acceptance is precluded under New York Insurance Law section 3420(d) from asserting any other coverage defenses that may have otherwise applied; and (d) for any additional relief this Court deems proper.[1]  (See docket entry no. 75 ("Pls. Mem.") at 1.)

The Court has reviewed the parties' submissions thoroughly, and, for the following reasons, Plaintiffs' Motion is granted in part and denied in part.

BACKGROUND

The following facts are drawn from the parties' submissions in connection with the Motion and are undisputed except where noted.[2]

On May 19, 2017, DNA contracted with Nautilus to perform work at a property owned by Nautilus, located at 2790 Bragg Street in Brooklyn, New York (the "Premises"). (Docket entry no. 79 ("Def. 56.1 Resp.") ¶ 12); docket entry no. 78 ("Def. 56.1 Cntr.") ¶¶ 1-2, 6.)  As part of the agreement, DNA was required to defend, indemnify and name Nautilus as an additional insured under DNA's policies of insurance.  (Def. 56.1 Resp. ¶ 12; Def. 56.1 Cntr. ¶ 6.)  On the same date, May 19, 2017, DNA subcontracted with OneTeam, which then entered into a subcontract with Miranda to perform masonry work at the Premises.  (Def. 56.1 Resp.¶ 12; Def. 56.1 Cntr. ¶ 7.)  Both the subcontract between DNA and OneTeam and the subcontract

---

[1]    At the end of their opening brief, Plaintiffs additionally request a declaration that OneTeam, Nautilus, and DNA are entitled to conditional indemnification, and an award of a money judgment in an amount to be determined as compensation for the costs and disbursements of this action.  (Docket entry no. 75 ("Pls. Mem.") at 24.)

[2]    Facts characterized as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 ("56.1 Statements") or drawn from evidence as to which there has been no contrary, non-conclusory factual proffer.  Citations to the parties' 56.1 Statements incorporate the parties' citations to the underlying evidentiary submissions and the opposing party's reply, if any.

between OneTeam and Miranda (the "Miranda Subcontract") include insurance procurement and indemnification language.  (Def. 56.1 Resp. ¶¶ 12-13; Def. 56.1 Cntr. ¶¶ 6-7.)  The Miranda Subcontract stipulates that, "The provisions, conditions, representations, and covenants of the Prime Subcontract between the Contractor and the Subcontractor and the Prime Contract between the Contractor and the Owner, including it's [sic] terms and conditions, is incorporated into this agreement by reference."  (Docket entry no. 73-15 at 4.)

On or about February 9, 2018, non-party Patricio Cedillo ("Cedillo") commenced an action in the Supreme Court of the State of New York, County of Queens (the "Underlying Action"), against Nautilus and non-party Estate NY Estate Services a/k/a Kings and Queens Leasing ("Estates"), alleging that, on December 27, 2017, "while acting within the scope of his employment at the [Premises], [Cedillo] was caused to fall from a height and was caused to sustain serious and permanent injuries," and that, "at all times" mentioned in the complaint, Cedillo "was employed by DNA Contract LLC."  (Docket entry no. 73-1 ("Underlying Complaint") ¶¶ 41-43.)  Cedillo further alleged that the injury was the result of negligence, and that the named defendants, "and/or each of them, and/or their agents, servants, associates, and/or employees were negligent, careless and reckless[.]"  (Id. ¶¶ 44-46.)  Cedillo also asserted claims under the New York Labor Law.  (See generally id.)

On or about August 13, 2018, Nautilus and Estates filed a third-party action against DNA.[3]  (Def. 56.1 Resp. ¶ 2.)  On or about May 13, 2019, Cedillo commenced a second action in Queens County Supreme Court (the "Second Underlying Action"), naming OneTeam and Miranda as defendants.  (Id. ¶ 3.)  Cedillo commenced a third action on November 30, 2020

---

[3]     The amended third-party summons and third-party complaint contained in the record bear a signature date of August 10, 2018, and a receipt date from the New York State Courts E-Filing System of August 13, 2018.  (See docket entry no. 73-2.)

(the "Third Underlying Action") asserting claims against DNA and non-party Skyline Restoration, Inc. ("Skyline").  (Def. 56.1 Cntr. ¶ 12.)  The Second and Third Underlying Actions asserted the same claims of negligence and violations of the New York Labor Law stemming from the December 27, 2017 accident, and the cases were subsequently consolidated by the state court into the original Underlying Action (collectively, the "Consolidated Underlying Action") by order dated July 13, 2022.  (Id. ¶ 13.)

On October 18, 2019, a default judgment order was entered against Miranda and OneTeam in the Second Underlying Action, prior to the consolidation of the cases.  (Def. 56.1 Resp. ¶ 5.)  The court found that "[Cedillo] demonstrated the merits of his claim by submitting an affidavit of merit as part of his motion," and that "[Miranda and OneTeam] failed to respond to [Cedillo's] instant motion."  (Docket entry no. 73-12 at 1.)  The default was vacated as against OneTeam on October 13, 2020, but Miranda had not entered an appearance in the Second Underlying Action or Consolidated Underlying Action as of the time the instant Motion was filed in this Court.  (Def. 56.1 Cntr. ¶ 20-21.)

On June 18, 2020, Nautilus and Estates, as third-party plaintiffs, filed a motion in the state court litigation seeking an order of conditional indemnity as against DNA.  (Def. 56.1 Resp. ¶ 7.)  On July 29, 2020, the court denied Nautilus's motion as premature, finding "that issues of fact exist regarding who [Cedillo's] employer was."  (Docket entry no. 73-11 at 5.) Nautilus and Estates appealed and, by order dated September 13, 2023, the Second Judicial Department of the Appellate Division of the New York State Supreme Court (the "Second Department") reversed, holding that "the Supreme Court should have granted [Nautilus and Estate's] motion, in effect, for conditional summary judgment on the third-party cause of action for contractual indemnification."  Patricio Cedillo v. Nautilus Realty Limited Partnership et al.,

Case No. 702077/2018, Doc. No. 207, at 2 (N.Y. Sup. Ct. Queens Cnty. Sept. 13, 2023).  The

Second Department reasoned in relevant part that:

> [Nautilus and Estates] established that [Cedillo] was injured while
> performing facade renovations pursuant to the contract between [Nautilus
> and Estates] and [DNA].  In opposition, [DNA] failed to raise a triable
> issue of fact.  [DNA] failed to provide sufficient evidence to dispute that
> [Cedillo's] claims arose out of or occurred in connection with the
> performance of the facade renovations.

Id. at 2.

On June 1, 2023, Cedillo moved for summary judgment in the

Consolidated Underlying Action against Nautilus and Estates on the issue of liability

pursuant to certain provisions of the New York State Labor Law.  (Def. 56.1 Resp. ¶ 11.)

The parties have provided no further updates regarding the status of the Consolidated

Underlying Action.

Relevant Insurance Contracts

Nautilus obtained coverage from non-party Chubb under policy number 9949-19-

66 REU (the "Chubb Policy") for the period of August 1, 2017, to August 1, 2018.  (See Def.

56.1 Resp. ¶ 18; Def. 56.1 Cntr. ¶¶ 3, 26.)  The Chubb Policy provided for a $1,000,000 per

occurrence limit of liability and $2,000,0000 aggregate limit of liability, and stipulated that it is

"excess over any **other insurance**, whether primary, excess, contingent, or on any other basis,"

"[i]f valid and collectible **other insurance** is available to any **insured** or other qualifying interest

(under [the Chubb Policy]) for any damages, loss, cost, or expense [Chubb] would otherwise

cover under [the Chubb Policy.]"  (Def. 56.1 Resp. ¶ 18; Def. 56.1 Cntr. ¶ 26; docket entry no.

73-20 at 47-48 (emphasis in original).)

DNA obtained coverage from non-party Liberty Mutual Insurance Company

("Liberty") under a commercial general liability policy with policy number B1262EN0258619

for the March 1, 2019, to March 1, 2020, policy period (the "Liberty Policy").  (Def. 56.1 Resp. ¶ 17; Def. 56.1 Cntr. ¶ 24.)  The Liberty Policy provides that, when DNA is named as an additional insured on the policy(ies) of others, the Liberty Policy "shall only apply in excess of and shall not be contributory with other said policy(ies)."  (Def. 56.1 Resp. ¶ 17; Def. 56.1 Cntr. ¶ 24.)

Scottsdale issued to OneTeam a general liability insurance policy under policy number NCS0001009 (the "Scottsdale Policy"), which was effective for the period of December 30, 2016, to December 30, 2017.  (Def. 56.1 Resp. ¶ 16; Def. 56.1 Cntr. ¶ 23.)  The Scottsdale Policy provided for a $1,000,000 per occurrence limit of liability and $2,000,000 aggregate limit of liability, and further provided that it is "excess over any other insurance, whether primary, excess, contingent or on any other basis . . . [t]hat is valid and collectible insurance available to any insured under any other policy."  (Def. 56.1 Resp. ¶ 16; Def. 56.1 Cntr. ¶ 23; docket entry no. 73-17 at 65-66.)

Acceptance issued to Miranda a general liability policy under policy number CL00231792 (the "Acceptance Policy"), with a per occurrence limit of $1,000,000 and aggregate limit of $2,000,000.  (Def. 56.1 Resp. ¶ 15; Def. 56.1 Cntr. ¶ 23.)  The Acceptance Policy contained two endorsements concerning additional insureds, the first of which is titled "Additional Insured – Primary and Non-Contributory," and numbered "AL 16 12 04 16." (Docket entry no. 80-1 ("Acceptance Policy") at 39, 63-64.)  This first endorsement extended coverage under the Acceptance Policy as follows:

> **A. SECTION  II – WHO IS AN INSURED** is amended to include as an insured the person(s) or organizations(s) shown in the Schedule, if required by written contract, but only as respects negligent acts or omissions of the Named Insured and only for occurrences, claims or coverage not otherwise excluded in the policy and subject to the following additional exclusions:

This insurance does not apply to:

**1.** "Bodily injury" or "property damage" occurring after:

> **a.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the person(s) or organization(s) shown in the Schedule at the site of the covered operations has been completed; or

> **b.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**2.** "Bodily injury", "property damage" or "personal and advertising injury" to any employee of the Named Insured or to any obligation of the person(s) or organization(s) shown in the Schedule to indemnify another because of damages arising out of such injury.

**B.** Where no coverage applies for the Named Insured, no coverage nor defense shall be afforded on behalf of the person(s) or organization(s) shown in the Schedule.

**C.** It is further agreed that such insurance as is afforded by this policy for the benefit of the person(s) or organization(s) shown in the Schedule shall be primary insurance as respects any claim, loss or liability arising out of the operations of the Named Insured as covered by this policy. If coverage is afforded under this policy, any other insurance maintained by the person(s) or organization(s) shown in the Schedule, as Named Insured, shall be excess and non-contributory to the coverage provided by this policy.

(Acceptance Policy at 39.)

The second additional insured endorsement was titled "Additional Insured –

Owners, Lessees or Contractors – Automatic Status When Required in Construction Agreement

With You," numbered "CG 20 33 07 04," and stipulated that:

> **A. Section II - Who is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

(Id. at 63-64 (emphasis in original).)  The second endorsement also contained exclusions concerning bodily injury and property damage arising out of certain circumstances.  (See id. at 64.)

The Acceptance Policy also included a so-called "Action Over Exclusion" Endorsement, which amended the Acceptance Policy to provide in relevant part that:

This insurance does not apply to:

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of any insured arising out of and in the course of:

**(a)** Employment by any insured; or

**(b)** Performing duties related to the conduct of any insured's business. . . .

This exclusion applies:

**(1)** Whether any insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

(Id. at 31.)

The Acceptance Policy was also amended to contain the "Injury to Employees, Workers or Contracted Person of Insured or Contracted Organizations Exclusion," which read in relevant part:

This insurance does not apply to:

**Injury To Employees, Workers Or Contracted Persons Of Insureds Or Contracted Organizations**

"Bodily injury" or "personal and advertising injury" to:

**(1)** Any person who is an "employee", "leased worker", "temporary worker" or "volunteer worker" of you or any insured arising out of and in the course of:

> **(a)** Employment by you or any insured; or

> **(b)** Performing duties related to the conduct of your or any insured's business;

**(2)** Any person who contracted with you or with any insured for services arising out of and in the course of performing duties related to the conduct of your or any insured's business;

**(3)** Any person who is employed by, is leased to or contracted with any organization that:

> **(a)** Contracted with you or with any insured for services; or

> **(b)** Contracted with others on your behalf for services;

> arising out of and in the course of employment by that organization or performing duties related to the conduct of that organization's business . . . .

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** Whether the insured may have any obligation to share damages with or repay someone else who must pay damages because of the injury.

(Id. at 40.)

Claim Tender and Disclaimer

It is undisputed that, on January 16, 2019, Scottsdale sent a letter to Acceptance, notifying Acceptance of the Underlying Action, identifying Cedillo as an employee of Miranda, and requesting defense, indemnification, and additional insured status on behalf of OneTeam, Nautilus, and DNA under the Acceptance Policy. (Def. 56.1 Resp. ¶ 22; Def. 56.1 Cntr. ¶ 36.) Acceptance received this tender of claim on January 20, 2019. (Def. 56.1 Cntr. ¶ 36.) Although Acceptance asserts that the January 2019 letter was the first such tender of claim, Scottsdale asserts that it had sent three prior tenders—by letter on April 17, 2018, and August 13, 2018, and one by email on November 20, 2018. (Def. 56.1 Resp. ¶¶ 19-21; Def. 56.1 Cntr. ¶¶ 36-39.)

Acceptance's first action in response to the January 2019 tender was an email on February 8, 2019, from John Kruse of Acceptance to Nancy Franklin of Scottsdale,[4] in which Mr. Kruse confirmed receipt of the January 16, 2019 tender and requested a copy of the lawsuit discussed in the January 2019 letter, i.e., the Underlying Action.  (Def. 56.1 Resp. ¶ 23; Def. 56.1 Cntr. ¶ 40.)  Ms. Franklin responded that same day, February 8, 2019, providing a copy of the complaint against Nautilus and Estate and a copy of the third-party complaint filed by Nautilus and Estates.  (Def. 56.1 Resp. ¶ 23; Def. 56.1 Cntr. ¶ 41.)  By email dated February 11, 2019, from Timothy Bavuso of Acceptance to Ms. Franklin, Mr. Bavuso asserted that the January 16, 2019, letter was Acceptance's "first notice of the incident," and requested additional information to evaluate the tender demand.  (Def. 56.1 Resp. ¶ 24; Def. 56.1 Cntr. ¶ 43.)  Ms. Franklin responded on February 12, 2019, providing additional information.  (Def. 56.1 Cntr. ¶ 43.)

In response to Mr. Bavuso's first, question—"According to the complaint [in the Underlying Action], plaintiff was an employee of DNA Contracting, LLC at the time of the accident. How is Miranda Contracting involved in the case?"—Ms. Franklin identified the basis for the tender as follows:

> The allegations is [sic] that plaintiff fell from a second floor balcony while doing façade work. They were utilizing a suspended scaffolding and sidewalk bridge in order to access the scaffolding. They first used a ladder to get on top of sidewalk bridge. They secured themselves with harnesses and lanyards to the suspended scaffolding. Jorge Quezada plaintiff's

---

[4]    Plaintiffs identify Nancy Franklin as a "Claims Consultant for Scottsdale" (Pls. Mem. at 12; docket entry no. 74 ("Franklin Aff.") ¶ 1).  Ms. Franklin's signature in the correspondence proffered in the record identifies her as a "Claims Specialist" for "Nationwide E&S/Specialty Claims."  (See, e.g., docket entry no. 74-6.)  Acceptance identifies Ms. Franklin as being associated with "Nationwide E&S/Specialty and underwriting company Scottsdale."  (Def. 56.1 Cntr. ¶ 36.)  The Court attributes the actions taken by Ms. Franklin to Scottsdale, as the parties do, for purposes of this Motion.  (See, e.g., Docket entry no. 77 ("Def. Mem.") at 8-9.)

> foreman (DNA employee) alleges that plaintiff was on the job site for 4
> months. At the time of the accident, Plaintiff was on the second floor
> balcony just above the garage and it was time for lunch. Plaintiff
> unhooked his harness and instead of walking along the sidewalk bridge
> towards the rear of building to descend the ladder, he jumped from
> balcony and landed his feet in bushes falling to his left side.

(Docket entry no. 80-5 at 2-4.)

Ms. Franklin further noted that there was a "[q]uestion if plaintiff was an employee of DNA vs. Miranda Contracting," that Cedillo "was working with witness and [the witness] thought [Cedillo] was [an] employee of DNA and that he had on a DNA shirt," and that Scottsdale's "[i]nsured provided statement that he had [a] contract with DNA for the façade work. That he subcontracted with Miranda Contracting." (Id. at 3.) Ms. Franklin concluded that, "We wanted to place you on notice if it is found that plaintiff was an employee of Miranda." (Id.)

Mr. Bavuso wrote to Miranda on February 12, 2019, seeking Miranda's cooperation with Acceptance's investigation. (Def. 56.1 Cntr. ¶ 45.) The letter also stated that Acceptance must "respectfully handle this matter subject to a full and complete reservation of rights to disclaim coverage and/or assert applicable policy defenses as may be warranted," and identified two policy provisions "that restrict or limit coverage." (Docket entry no. 80-6 at 1-2.) The first of these two provisions was the so-called "Expected or Intended Injury," which stipulated that, "This insurance does not apply to . . . '[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured. This exclusion does not apply to 'bodily injury' or 'property damage' resulting from the use of reasonable force to protect persons or property." (Id. at 2-3.) The second provision identified in the letter was the provision regarding "Duties in the Event of an Occurrence, Claim or Suit," which required prompt notification of an occurrence that may result in a claim, notification of a suit against any insured

if filed, and general cooperation with an investigation of any claim or lawsuit.  (Id. at 3-4.)

Miranda did not respond to Acceptance's February 12, 2019 letter.  (Def. 56.1 Cntr. ¶ 47.)

On February 25, 2019, Acceptance attempted to contact a representative for

Liberty and DNA by phone and email to discuss the Underlying Action.  (Docket entry no. 80

("Newcomb Aff.") ¶ 15.)  No response is in the record.  On March 6, 2019, Mr. Bavuso spoke

with Ms. Franklin regarding the claim, and Ms. Franklin emailed Mr. Bavuso a copy of the

Miranda Subcontract.  (Def. 56.1 Resp. ¶ 26.)  Mr. Bavuso again attempted to contact Miranda

on March 6, 2019, by phone, but the number of the relevant representative "indicated that it was

no longer receiving calls."  (Def. 56.1 Cntr. ¶ 47; Newcomb Aff. ¶ 16.)  Mr. Bavuso attempted to

contact a representative for Liberty and DNA on that date as well, seeking "evidence to

substantiate plaintiff's employment with Miranda on the date of accident," and stating in the

email correspondence that, "[a]ssuming that plaintiff is / was an employee of Miranda, I wish to

notify you of potential exclusions in the AIIC policy that restrict, limit, alter and/or preclude

coverage for this claim."  (Docket entry no. 80-8.)  Acceptance attempted to contact Miranda

once more on March 11, 2019.  (Newcomb Aff. ¶ 19.)

By letter dated March 11, 2019, Acceptance disclaimed coverage for the

Underlying Action, stating that, "[a]t this time, none of the parties have proved [sic] evidence

that Patricio Cedilla [sic] was an employee of Miranda at the time of the accident," but citing

seven provisions of the Acceptance Policy that Acceptance asserted would bar coverage "even if

such evidence [were] provided," specifically: "(1) the Action Over Exclusion; (2) the Injury to

Employees, Workers or Contracted Person of Insured or Contracted Organizations Exclusion; (3)

the Wrap-Up Exclusion; (4) the Independent Contractor's Work Exclusion; (5) The Additional

Insured – Primary and Non-Contributory Endorsement; (6) Subsection A.2. of . . . The

Additional Insured – Primary and Non-Contributory Endorsement; and (7) Subsection B. of . . . The Additional Insured – Primary and Non-Contributory Endorsement."  (Def. 56.1 Resp. ¶ 28; Def. 56.1 Cntr. ¶ 51; docket entry no. 74-11 at 9.)  The letter was addressed to Miranda, copying Nancy Franklin of Scottsdale, Debra Lazaro, Esq. of John R. Riddle & Associates, a representative for DNA,[5] and Jeremy D. Platek, Esq., an attorney for Nautilus in the Underlying Action.  (Def. 56.1 Resp. ¶ 28; docket entry no. 74-11 at 11.)

On May 31, 2019, Plaintiffs Scottsdale, OneTeam, DNA, and Nautilus commenced this action in the Supreme Court of the State of New York State, County of New York, against Acceptance, seeking, inter alia, a declaration of coverage and defense and indemnity for OneTeam, Nautilus, and DNA in the Underlying Action as additional insureds under the Acceptance Policy.  (See docket entry no. 1.)  Acceptance removed the action to this Court on August 2, 2019, pursuant to 28 U.S.C. sections 1332, 1441, and 1446.  (Id.)  Plaintiffs filed the pending Motion on September 13, 2023, and this action was thereafter transferred to the undersigned.

DISCUSSION

Summary judgment is to be granted in favor of a moving party if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A fact is considered material if it "might affect the outcome of the suit under the governing law," and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

[5]    Acceptance identifies Ms. Lazaro as the third-party administrator of DNA (Def. 56.1 Resp. ¶ 28), while Plaintiffs identify Ms. Lazaro as an attorney for DNA (Pls. Mem. at 13.)

party." <u>Holtz v. Rockefeller & Co.</u>, 258 F.3d 62, 69 (2d Cir. 2001) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  In determining whether there is a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." <u>Johnson v. Killian</u>, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam) (citation omitted).

To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 160 (2d Cir. 2002) (citation omitted).  The nonmoving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." <u>Golden Pac. Bancorp v. FDIC</u>, 375 F.3d 196, 200 (2d Cir. 2004) (citation omitted).

<u>New York Insurance Law Section 3420(d)</u>

Under New York Insurance Law Section 3420(d) ("Section 3420(d)"), an insurer seeking to disclaim liability or deny coverage must give written notice "as soon as is reasonably possible." N.Y. INS. LAW § 3402(d)(2).  The "timeliness of an insurer's disclaimer is measured from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage," <u>First Fin. Ins. Co. v. Jetco Contracting Corp.</u>, 801 N.E.2d 835, 838-39 (N.Y. 2003) (citation omitted), and "[a] failure to give [the requisite] prompt notice precludes an effective disclaimer or denial," <u>JT Magen v. Hartford Fire Ins. Co.</u>, 879 N.Y.S.2d 100, 102 (N.Y. App. Div., 1st Dep't 2009).  "An insurer who delays in giving written notice of disclaimer bears the burden of justifying the delay." <u>First Fin.</u>, 801 N.E.2d at 839.  Although determining whether a delay in disclaiming was reasonable is generally a question of fact, <u>Mount Vernon Fire Ins. Co. v. Harris</u>, 193 F. Supp. 2d 674, 677 (E.D.N.Y. 2002) (citation omitted), an insurer's

explanation will be found unreasonable as a matter of law where (1) the basis for denying coverage was or should have been readily apparent before the onset of the delay, First Fin., 801 N.E.2d at 839 (citation omitted); (2) the insurer provides no explanation whatsoever, id. at 840; or (3) or the delay is unexcused, i.e., the explanation is unsatisfactory. Id. "[I]nvestigation into issues affecting an insurer's decision whether to disclaim coverage obviously may excuse delay in notifying the policyholder of a disclaimer," id. at 839, but such investigation must be "prompt, diligent," and undertaken in good faith. See, e.g., 2540 Assocs. v. Assicurazioni Generali, S.P.A., 707 N.Y.S.2d 59, 61 (N.Y. App. Div., 1st Dep't 2000).

Plaintiffs argue that they are entitled to summary judgment because Acceptance's disclaimer of coverage was untimely and invalid, and that Acceptance is therefore precluded from relying on the exclusions cited in the March 2019 disclaimer as a bar to coverage of OneTeam, DNA, and Nautilus. (Pls. Mem. at 21-23.) Acceptance counters that Section 3420(d) was inapplicable at the time of the March 2019 disclaimer because OneTeam, DNA, and Nautilus did not qualify as additional insureds at the time of the January 2019 tender of claim (docket entry no. 77 ("Def. Mem.") at 12-14), and because Scottsdale is the "real party in interest" seeking reimbursement of defense costs (id. at 14-15). Acceptance alternatively argues that, even assuming that Section 3420(d) does apply, Acceptance's March 2019 disclaimer was timely and valid (id. at 15-21), and that Plaintiffs are not entitled to coverage (id. at 21-23). The parties also dispute whether conditional indemnification of OneTeam, DNA, and Nautilus by Acceptance is appropriate, and if so, whether it is premature at this juncture. (Pls. Mem. at 19-20; Def. Mem. at 23-25.)

The Court first addresses Acceptance's arguments that the protections of Section 3420(d) were inapplicable at the time of its disclaimer, before turning to the parties' arguments

regarding the effectiveness and validity of Acceptance's disclaimer, and Plaintiffs' asserted entitlement to conditional indemnity.

Applicability of Section 3420(d) to the Instant Action

Additional Insured Status

Acceptance first argues that the protections of New York Insurance Law Section 3420(d) are not implicated here because OneTeam, DNA, and Nautilus did not qualify as additional insureds at the time of the January 2019 tender, and these entities were therefore not entitled to a defense under the Acceptance Policy.  (Def. Mem. at 12-14.)  Endorsement AL 16 12 04 16 of the Acceptance Policy provided that additional insured status was extended to the parties specified in the Policy's Schedule "if required by written contract, but only as respects negligent acts or omissions of the Named Insured and only for occurrences, claims or coverage not otherwise excluded in the policy and subject to" the additional exclusions specified in the Endorsement.  (See Acceptance Policy at 39.)  Courts have interpreted similar policy language to require a showing that the relevant accident was proximately caused by the named insured.  Burlington Ins. Co. v. NYC Transit Auth., 29 N.Y.3d 313, 317 (2017).  The Endorsement further stipulated that, "[w]here no coverage applies for the Named Insured, no coverage nor defense shall be afforded on behalf of" the additional insureds specified in the Policy's Schedule." (Acceptance Policy at 39.)

Ordinarily under New York law, "[a]n insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy."  Town of Massena v. Healthcare Underwriters Mut. Ins. Co., 779 N.E.2d 167, 170 (N.Y. 2002) (internal quotation marks omitted).  However, the duty to defend may also arise if the insurer "has actual knowledge of facts establishing a

reasonable possibility of coverage." <u>Fitzpatrick v. Am. Honda Motor Co.</u>, 575 N.E2d 90, 93 (N.Y. 1991) (citation omitted).  As the New York Court of Appeals has explained, "where the insurer is attempting to shield itself from the responsibility to defend despite its actual knowledge that the lawsuit involves a covered event, wooden application of the 'four corners of the complaint' rule would render the duty to defend narrower than the duty to indemnify," which is "clearly an unacceptable result."  <u>Id.</u> at 92.  "This standard applies equally to additional insureds and named insureds," <u>Regal Constr. Corp. v. Nat'l Union Fire Ins. Co.</u>, 930 N.E.2d 259, 261-62 (N.Y. 2010), and "any ambiguity [in the governing policy] must be resolved in favor of the insured and against the insurer."  <u>Westview Assocs. v. Guar. Nat'l Ins. Co.</u>, 740 N.E.2d 220, 223 (N.Y. 2000).

Whether an insurer has a duty to defend is a question of law.  <u>Liberty Mut. Fire Ins. Co. v. Hamilton Ins. Co.</u>, 356 F. Supp. 3d 326, 336 (S.D.N.Y. 2018) (citation omitted).  The duty may only be disclaimed if the insurer "establishes as a matter of law that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision."  <u>Allstate Ins. Co. v. Zuk</u>, 574 N.E.2d 1035, 1037 (N.Y. 1991) (citations omitted).

Acceptance argues that, because there were no allegations in the first Underlying Action that the alleged bodily injuries were in any way caused by Miranda, there was no connection, at the time the January 2019 notice was given, between Miranda, Acceptance's named insured, and the underlying loss, that would support additional insured status for OneTeam, DNA, and Nautilus with respect to the personal injury claims.  (Def. Mem. at 12.) The complaint in the Underlying Action alleged that Cedillo was an employee of DNA, and that he was injured due to the negligence of, <u>inter alia</u>, DNA.  (<u>See</u> Underlying Complaint ¶¶ 41-43.)

According to Acceptance, it was only after the Second Underlying Action was filed on May 13, 2019, against OneTeam and Miranda directly, that there was any "suggestion" that Miranda was tied to the underlying personal injury claims. (Def. Mem. at 12.) Thus, Acceptance posits, its March 2019 disclaimer cannot be rejected as unduly delayed.

Acceptance likens the instant dispute to the case of Sw. Marine & Gen. Ins. Co. v. United Specialty Ins. Co., No. 19-CV-8857-ER, 2022 WL 2237491 (S.D.N.Y. June 22, 2022). In Sw. Marine, the court initially denied the additional insured's motion for summary judgment under a policy with an additional insured provision similar to that of the instant Acceptance Policy, because the underlying state court complaint "contain[ed] no allegations that [the named insured] was negligent or otherwise responsible for the injury," and, therefore, "there [could] be no genuine dispute that the [underlying state court complaint] does not allege acts or omissions by [the named insured] that could have proximately caused the injury, and the additional insured provision is not triggered." Id. at *5.

However, as Plaintiffs point out, the Sw. Marine court subsequently granted the named insured's motion for reconsideration on this issue and found in its favor, after the named insured brought the court's attention to a third-party complaint in the underlying action brought by the additional insured, which contained allegations that the relevant employee's injuries were in fact caused by the named insured. See Sw. Marine & Gen. Ins. Co. v. United Specialty Ins. Co., No. 19-CV-8857-ER, 2022 WL 3904096 (S.D.N.Y. Aug. 30, 2022). The court found that the additional insured's third-party complaint "create[d] a 'reasonable possibility' that [the employee's] injuries [fell] within the scope of [the named insured's] policy with" the defendant insurance company, and therefore the carrier for the named insured was under a duty to defend the additional insured, under the governing insurance policy. Id. at *2.

This finding is consistent with Court of Appeals precedent dictating that the duty to defend does not turn solely on the allegations contained within the four corners of the complaint, as discussed above.  The facts underlying the case that enunciated this principle, Fitzpatrick v. American Honda Motor Co., 78 N.Y.2d 61 (1991), are instructive with respect to the instant dispute.  The plaintiff in Fitzpatrick brought a wrongful death action on behalf of her husband, John Fitzpatrick, who had died while operating a three-wheel all-terrain vehicle.  Id. at 63.  The vehicle was alleged in the complaint to have been owned by individual defendant Frank Moramarco, who allegedly gave Fitzpatrick permission to use the vehicle as an independent contractor of Moramarco in connection with certain yardwork and household chores.  Id.  Co-defendant Cherrywood Property Owners Association ("CPOA") was identified in the complaint as the entity that had initially contracted Moramarco.  Id.

In reality, Moramarco was an "officer, shareholder and director of an independent concern called Cherrywood Landscaping, Inc." ("CLI"), which CPOA had retained to do landscaping work on CPOA's property, the site of Fitzpatrick's accident.  Id.  The vehicle in question had been purchased by Moramarco on behalf of CLI.  Id.  CLI had purchased a liability insurance policy with National Casualty Co., which "indemnified the corporation against having to pay damages for bodily injury and property damage arising out of its business," and defined "'insured persons' [as] 'any executive officer, director or stockholder [of the named insured (i.e., CLI]] while acting within the scope of his duties as such.'"  Id. at 63-64.  Despite being presented with these facts, "National maintained that it was not required to provide a defense because the complaint did not name CLI and Moramarco, the named defendant, was not insured as an individual."  Id. at 64.  National continued to advance this position in the third-party action

subsequently brought by Moramarco against CLI to establish CLI's liability in the main wrongful death action.  Id.

The New York Court of Appeals reversed the Appellate Division's dismissal of Moramarco's third-party action, rejecting the lower court's reasoning that "the allegations in the complaint are the determinative factor in resolving whether the provisions of an insurance policy have been 'activated' in a particular action." Id. at 65.  Instead, the Court of Appeals sided with the body of courts and commentators that had "indicated that the insurer must provide a defense if it has knowledge of facts which potentially bring the claim within the policy's indemnity coverage." Id. at 66 (citations omitted).  The court therefore would not permit CLI to "deny Moramarco an insurance-company sponsored defense . . . merely because the attorney for the plaintiff in the main action accidentally mischaracterized Moramarco's role." Id. at 69.

In the instant case, Acceptance is similarly attempting to disclaim liability to its named and additional insureds based on the fact that the complaint filed in the Underlying Action, as it read at the time of Scottsdale's tender, named DNA as the negligent employer of the injured plaintiff, Cedillo, rather than Acceptance's named insured, Miranda.  However, at the time of what Acceptance characterizes as the initial tender, Acceptance was made aware in the tender letter itself that there was a question as to Cedillo's employer, as the tender letter identified Patricio Cedillo as an employee of Miranda, and therefore requested defense and indemnification from Miranda and its insurer for any litigation by Cedillo.  (See docket entry no. 74-6 ("January 2019 Tender")).

Upon further investigation, Acceptance learned from Scottsdale by email on February 12, 2019, that Scottsdale had received a tender from DNA, with whom Scottsdale's named insured, OneTeam, had contracted to provide façade work at the site of Cedillo's injury.

(Docket entry no. 80-5 at 2-3.)  Scottsdale asserted in the February 12, 2019, email that OneTeam had further subcontracted with Miranda to complete said façade work, and, as a result of the foregoing facts, there was a question as to whether Cedillo—who was allegedly performing façade work at the time of his injury—was an employee of DNA, Miranda, or another non-party contractor by the name of Skyline Restoration.  (Id. at 2-3.)  On March 6, 2019, Scottsdale also provided Acceptance with the contract between OneTeam and Miranda, executed in May of 2017, which specified that Miranda would provide masonry work in accordance with the prime contract between Nautilus and DNA at the site of Cedillo's injury, confirming Scottsdale's prior representation that OneTeam had subcontracted Miranda.  (Def. 56.1 Resp. ¶ 26.)

        As in Fitzpatrick, Acceptance cannot rely solely on the Underlying Action's complaint to assess its duty to defend Miranda, ignoring the factual uncertainty regarding Cedillo's employer that was made known to Acceptance over the course of its investigation. Accordingly, the Court finds that the record is sufficient to establish that Acceptance was aware of the foregoing facts, which established a reasonable possibility that Cedillo's injuries were due to the negligence of Miranda, rather than of DNA, and therefore fell within the scope of the Acceptance Policy, triggering Acceptance's duty to defend OneTeam, DNA, and Nautilus as additional insureds.  See Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 620 (2d Cir. 2001) (explaining that, until resolved by courts or juries, factual or legal uncertainties will not excuse an insurer's duty to defend so long as the relevant claim "may rationally be said to fall within policy coverage").

<u>Effect of Scottsdale's Tender and Plaintiffs' Requested Relief</u>

Acceptance further argues that Section 3420(d) is not implicated in the instant action "because Scottsdale is the real party in interest." (Def. Mem. at 14.) Specifically, Acceptance asserts that "[t]he instant coverage action fundamentally represents a claim between insurers, not between an insurer and an insured," because "Scottsdale accepted coverage for its Named Insured OneTeam and for DNA and Nautilus as additional insureds under the Scottsdale Policy . . . and has been defending them in the [consolidated] Underlying Action, and in the instant coverage action is seeking reimbursement for defense costs paid." (<u>Id.</u> at 15.)

Contrary to Acceptance's argument, New York courts have repeatedly held that, where, as here, an insurance carrier submits a tender to another insurance carrier, requesting defense and indemnification in an underlying personal injury action instituted against a mutual insured, "only the tendering carrier [does] not get the benefit of Section 3420(d) . . . because that section does not apply to claims between insurers." <u>JT Magen</u>, 879 N.Y.S.2d at 102 (discussing <u>Bovis Lend Lease LMB, Inc. v. Royal Surplus Lines Ins. Co.</u>, 806 N.Y.S.2d 53 (N.Y. App. Div., 1st Dep't 2005)). In contrast, when a carrier tenders a notice of claim on behalf of a mutual insured, the mutual insured will "receive the protections of Section 3420(d)," because the mutual insured qualifies as a "prospective claimant" for purposes of Section 3420(d). <u>Id.</u> at 270. In such a case, the insurer that receives the notice of claim is "under a legal obligation to timely disclaim [to the mutual insured] pursuant to the statute." <u>Id.</u>

In the instant case, Scottsdale tendered a notice of claim to Acceptance, at least as of January 16, 2019, on behalf of its mutual insureds, OneTeam, DNA, and Nautilus. (<u>See</u> Def. 56.1 Resp. ¶ 22; Def. 56.1 Cntr. ¶ 36.) Plaintiffs seek more than reimbursement to Scottsdale in the instant action; they seek declaratory judgments and damages stemming from Acceptance's

obligations to OneTeam, DNA, and Nautilus as well.  (Docket entry no. 1 ("Compl.") at 14-15;

Pls. Mem. at 24.)  Consistent with New York precedent, OneTeam, DNA, and Nautilus's

entitlement to that relief turns on Acceptance's compliance with Section 3420(d), as explored in

the following sections.  See JT Magen, 879 N.Y.S.2d at 102-103.  This analysis as to OneTeam,

DNA, and Nautilus is not altered by the fact that Scottsdale has undertaken defense of these three

entities in the Consolidated Action below.  See, e.g., Bovis, 806 N.Y.S.2d at 60 (affirming lower

court's finding that defendant insurance carrier's disclaimer was untimely as a matter of law as

to additional insureds, where plaintiff insurance carrier had been "providing the defense of the

underlying action for nearly three years" and was seeking full defense and indemnity of the

mutual insureds).  The Court further notes that Scottsdale has proffered evidence that the defense

has been undertaken subject to a reservation of rights under its policy, which provides, inter alia,

that it is excess to other valid and collectable insurance.  (See docket entry no. 74 ("Franklin

Aff.") ¶ 7; docket entry no. 74-4.)

Effectiveness of Acceptance's Disclaimer as to the Duty to Defend

       Having determined that Acceptance had a duty to defend OneTeam, DNA, and

Nautilus as additional insureds under the Acceptance Policy, the Court must next address

Acceptance's alternative arguments that disclaimer under Section 3420(d) was timely and valid.

Acceptance argues that (1) the first tender it received from Scottsdale was the January 16, 2019,

letter, which it received on January 20, 2019 (Def. Mem. at 16); (2) the disclaimer Acceptance

issued on March 11, 2019, was timely in relation to the January 2019 letter (id. at 17-18); and (3)

the disclaimer was properly directed to Miranda and copied to the additional insureds, OneTeam,

DNA, and Nautilus (rather than directed to each individual additional insured), and was

sufficiently specific to be effective (id. at 18-21).  The Court addresses each argument in turn.

Operative Tender Letter

Scottsdale asserts that it tendered a notice of claim on four separate occasions: (1) an April 17, 2018, letter directed to Miranda on behalf of OneTeam and Nautilus (Franklin Aff. ¶ 6); (2) an August 13, 2018, letter directed to Miranda and Acceptance on behalf of OneTeam, Nautilus, and DNA (id. ¶ 8); (3) an email to Acceptance's general email address on November 20, 2018, on behalf of OneTeam and Nautilus (id. ¶ 4); and (4) by letter on January 16, 2019, to Miranda and Acceptance, on behalf of OneTeam, Nautilus, and DNA (id. ¶ 9).[6]  (See also docket entry no. 84 ("Reply Mem.") at 6.)  Although Acceptance concedes that it received the January 2019 tender on January 20, 2019, it disputes having received the earlier tenders, and argues that Plaintiffs have not proffered proof of mailing as to the April and August 2018 letters "to confirm that those letters were actually sent."  (Def. Mem. at 16.)  Acceptance also asserts that it "never received" the November 2018 email tender communication.  (Def. 56.1 Resp. ¶ 19.)

Plaintiffs argue that, under the mailbox rule, the Court should credit their assertions that the April and August 2018 tender letters were received.[7]  (Reply Mem. at 7.) Under New York law, "[t]here is a rebuttable presumption that a letter which is mailed is received by the addressee."  Mount Vernon Fire Ins. Co. v. E. Side Renaissance Assocs., 893 F. Supp. 242 (S.D.N.Y. 1995) (citations omitted).  However, in order to be afforded such presumption, a party must present either "proof of actual mailing or proof of a standard office

---

[6]    Plaintiffs do not explain the discrepancy in Additional Insureds specified in each tender. Scottsdale agreed to defend Nautilus and DNA as additional insureds on August 9, 2018. (Franklin Aff. ¶ 7.)

[7]    Plaintiffs additionally argue that Acceptance did not address the November 2018 email in its opposition (Reply Mem. at 7), but Acceptance asserted in its response to Plaintiffs' 56.1 statement that "[Acceptance] never received a November 20, 2018 email from [Scottsdale]" (Def. 56.1 Resp. ¶ 19), and repeatedly asserts in its opposition briefing that the January 2019 tender was the first tender it received (see, e.g., Def. Mem. at 16).

practice or procedure designed to ensure that items are properly addressed and mailed."
Residential Holding Corp. v. Scottsdale Ins. Co., 729 N.Y.S.2d 776, 778 (N.Y. App. Div., 2d

Dep't 2001).  Courts in this Circuit have applied the same rebuttable presumption of receipt to

email communications.  See, e.g., Charter Commc'ns, Inc. v. Garfin, 20-CV-7049-KPF, 2021

WL 694549, at *9 n.6 (S.D.N.Y. Feb. 23, 2021).  The Court finds that Plaintiffs have not

proffered sufficient evidence to be afforded the presumption of receipt as to the first three

purported tenders.

        Turning first to the April and August 2018 letters, both of which are marked as

"certified mail," Plaintiffs have not provided a certificate or other proof of actual mailing.

(Docket entry no. 74-3 ("April 2018 Tender"); docket entry no. 74-5 ("August 2018 Tender").)

Notably, the April 2018 letter, in contrast to the remaining letters, is not addressed to

Acceptance, nor is Acceptance copied on the letter.  (April 2018 Tender at 2-3.)  Moreover,

although the claims specialist who is the signatory to the two letters, Nancy Franklin, is the same

individual who submitted an affidavit in support of Plaintiffs' Motion (see April 2018 Tender at

3; August 2018 Tender at 3), Ms. Franklin does not attest to Scottsdale's standard office practice

or procedure for mailing such tender letters, nor does she identify who mailed the tender letters

at issue.  (See generally Franklin Aff.)  Mailing is instead described in the passive voice.

(Franklin Aff. ¶ 6 ("On April 17, 2018, a tender letter was sent . . . ."); id. ¶ 8 ("On August 13,

2018, a second tender letter was sent . . . .").)  Because Plaintiffs have not proffered sufficient

evidence to establish proof of mailing as to the April and August 2018 tender letters, they are not

entitled to a rebuttable presumption of receipt, and the burden therefore does not shift to

Acceptance to rebut a presumption of receipt.  (See Reply Mem. at 7 (arguing that "Acceptance

has not provided any proof to rebut this presumption . . . [t]hus . . . Acceptance did receive notice . . . prior to January 2019").)

Acceptance also denies that it received the alleged tender by email on November 20, 2018, which Plaintiffs assert was sent on behalf of OneTeam and Nautilus as additional insureds. (Franklin Aff. ¶ 4; Pls. Mem. at 12; Def. 56.1 Resp. ¶ 19.) The only evidence proffered by Plaintiffs to establish proof of mailing appears to be an electronic claim note, which indicates that the email was sent, and identifies the recipient address as "newloss@IATSpeciality.com" and the sender as an email address attributed to Ms. Franklin. (Docket entry no. 74-1 at 2.) It is not clear from the claim note whether the text entered under the "comment" section is the text of the alleged email, nor what document, if any, was attached to the email. (Id.) In contrast to the other emails proffered by Scottsdale in the record, Plaintiffs do not provide a copy of the email itself from Scottsdale's email service provider that demonstrates that the email was successfully sent, nor does Ms. Franklin attest to a standard practice of carefully recording emails that have been successfully sent in Scottsdale's claim records system, such that the claim note, by itself, could constitute proof of mailing.[8] (See generally Franklin Aff.) In short, Plaintiffs' proffered claim note is insufficient to prove that a November 2018 tender was sent by email and to support a rebuttable presumption of receipt.

---

[8]    Ms. Franklin does attest that electronic claims notes were "systematically prepared and routinely relied upon in the conduct of Scottsdale's business as an insurance company and were kept as part of Scottsdale's habitual, systematic business routine" (Franklin Aff. ¶ 1), but this general attestation as to the maintenance of business records does not speak specifically to a standard and systematic practice of recording transmitted emails in claim files.

Because there is insufficient proof of receipt as to Plaintiffs' three earliest alleged tenders, the operative tender letter for purposes of this Motion is the one sent on January 16, 2019, which Acceptance concedes it received on January 20, 2019.  (Def. Mem. at 16.)

<u>Timeliness of Disclaimer</u>

Next, Acceptance argues that any delay from the January 20, 2019, receipt to its March 11, 2019 disclaimer was reasonable, because there was a need to investigate the merits of the claim, specifically the identity of Cedillo's employer.  (<u>Id.</u> at 17-18.)  However, Acceptance fails to explain why it could not have issued an earlier disclaimer premised upon the other policy exclusions upon which it eventually relied while its investigation into Cedillo's employer continued.  Specifically, the exclusions cited in the March 2019 disclaimer include the: (1) Action Over Exclusion, (2) Independent Contractor Exclusion; and (3) Injury to Employees, Workers or Contracted Persons of the Insured or Contracted Organization Exclusion; and (4) exclusions contained in the Additional Insured – Primary and Non-Contributory endorsement.  (Def. 56.1 Cntr. ¶ 51 (citing docket entry no. 80-9 ("March 2019 Disclaimer")).)  Acceptance noted in the March 2019 disclaimer letter that all four of these exclusions would operate as bars to coverage <u>even if</u> evidence were produced that Cedillo was an employee or independent contractor of Miranda and working in the scope and course of his employment at the time of his injury, and further asserted that, because Miranda was not entitled to coverage on these bases, neither were any additional insureds.  (March 2019 Disclaimer at 9-10.)

The record demonstrates that, by February 12, 2019, Acceptance had received the tender letter asserting that Cedillo was an employee of Miranda; a copy of the complaint in the Underlying Action, which specifically alleged that Cedillo was "performing his work at the construction site" and was "acting within the scope of his employment" at the relevant

construction site when he was injured on December 21, 2017 (Underlying Complaint ¶¶ 42-43); and additional information regarding the nature of the claim in the Underlying Action and Miranda's relationship to Scottsdale's named insured, OneTeam, from Scottsdale's representative, Ms. Franklin.  (See docket entry no. 80-3 ("Acceptance Claims Notes") at 5 (noting that Mr. Bavuso had received an email from Ms. Franklin, "wherein she has addressed most if not all of my questions"); docket entry no. 80-5; see also Reply Mem. at 9-10 ("The Claims Log . . .  confirms that Acceptance was aware that Nautilus, One Team and DNA were potentially entitled to coverage under the Acceptance Policy and that a contract existed for work performed at the construction site. Acceptance was also aware that there were allegations that Cedillo was employed by Miranda.").  Acceptance has failed to justify its delay in disclaiming based upon the foregoing exclusions following Scottsdale's provision of information on February 12, 2019.  See First Fin., 801 N.E.2d at 839 ("An insurer who delays in giving written notice of disclaimer bears the burden of justifying the delay.").  The only explanation Acceptance has advanced to explain its delay in the ensuing month is its investigation of Cedillo's employer, particularly its efforts to contact Miranda.  (Def. Mem. at 18.)

The fact that Acceptance was continuing to investigate the identity of Cedillo's employer did not, however, excuse Acceptance from its obligations under Section 3420(d) to disclaim as soon as reasonably possible on grounds it knew to be applicable.  See Endurance Am. Specialty Ins. Co. v. Utica First Ins. Co., 17 N.Y.S.3d 401, 403 (N.Y. App. Div., 1st Dep't 2015) ("Insurance Law § 3420 (d) 'precludes an insurer from delaying issuance of a disclaimer on a ground that the insurer knows to be valid . . . while investigating other possible grounds for disclaiming.'" (citations omitted)).  Rather, Acceptance could have disclaimed on the foregoing bases that it asserted would apply even if Miranda were found to be Cedillo's employer, as

Acceptance eventually did in its March 11, 2019, disclaimer, and thereafter disclaimed in a separate letter on the additional ground that Cedillo was not an employee or independent contractor of its named insured, Miranda, "once that fact was ascertained," if it ever was.  See, e.g., Matter of Allstate Ins. Co. v. Swinton, 811 N.Y.S.2d 108, 108-109 (N.Y. App. Div., 2d Dep't 2006) (finding 34-day delay to be unreasonable as a matter of law where insurer could have immediately disclaimed on grounds it knew to be applicable, and thereafter disclaimed on separate basis once investigation on those grounds complete, but did not do so).

Moreover, Acceptance's delay in disclaiming following its investigation was exacerbated by the approximately nineteen days between the date it concedes it received the January 16, 2019, tender—January 20, 2019—and the date on which Acceptance first began its investigation, February 8, 2019, a delay for which Acceptance offers no explanation whatsoever. See Hartford Ins. Co. v. County of Nassau, 46 N.Y.2d 1028, 1030 (N.Y. 1979) ("It is the responsibility of the insurer to explain its delay; it is not the function of the courts to engage in speculation as to what might have happened in order to remedy a failure of proof.").  While Acceptance is correct that "[t]he reasonableness of the delay [in disclaiming coverage] is measured 'from the time when the insurer was aware of sufficient facts to disclaim'" (Def. Mem. at 17 (citation omitted)), it would defeat the purpose of the statute if an insurer could manipulate the start of the clock by delaying its investigation of a tender of claim at the outset.

Accordingly, the Court finds that Acceptance's approximately twenty-seven-day delay between February 12, 2019, and March 11, 2019, the date on which Acceptance disclaimed, in conjunction with its unexplained nineteen-day delay in beginning its investigation,

to be unreasonable as a matter of law.[9]  Acceptance's untimely disclaimer is therefore ineffective as to OneTeam, DNA, and Nautilus. JT Magen, 879 N.Y.S.2d at 104-105 (holding unreasonable delay in disclaiming precluded insurer from disclaiming, per Section 3420(d)).

Because the Court has found that the disclaimer was unreasonably delayed as a matter of law and therefore unenforceable as to these three entities, the Court need not reach Plaintiffs' arguments that the disclaimer was invalid due to the disclaimer's purported failure to specifically address each entity's claim for coverage and to inform each such entity.  (Pls. Mem. at 22-23); see also Bovis, 806 N.Y.S.2d at 58.

<u>Insurance Policy Exclusion Versus No Coverage</u>

Acceptance next argues that, even if the Court were to find that Section 3420(d) applied to the instant dispute, and that Acceptance's March 2019 disclaimer was untimely and/or not properly addressed, OneTeam, DNA, and Nautilus were not entitled to additional insured

---

[9]    Acceptance's claim notes indicate that the claims adjuster from Acceptance did not receive a full copy of the Acceptance Policy until February 28, 2019, a fact that none of the parties address in their briefing.  It is not clear to the Court what document the claims adjuster was reviewing in the February 11, 2019, notes, nor why it took 17 days for Acceptance's "underwriting department" to provide a complete copy of the Policy.  (See Acceptance Claims Notes at 3; docket entry no. 80-5 at 4.)  While courts have found disclaimer delays to be reasonable "when an external factor beyond the insurer's control unexpectedly interferes with the insurer's ability to investigate the claim in a timely fashion," Bovis, 806 N.Y.S.2d at 57, Acceptance makes no argument to this effect, and a delay in transmitting the Policy documents between internal departments of Acceptance is not the type of uncontrollable, external factor previously recognized by courts as justification for delay.  See, e.g., id. (holding that insurer's "staffing problem was not an external factor beyond its control like a computer system failure or the need to wait for a more convenient time to interview a woman who has just delivered a baby").  Even assuming that February 28, 2019, was the date on which Acceptance had sufficient facts to disclaim, its delay of 11 days, on top of its 19-day delay in beginning its investigation, would still be unreasonable as a matter of law, in view of its failure to explain the delay in beginning its investigation, and its failure to promptly obtain a copy of its own insurance policy for analysis.  Cf. 2540 Assocs., 707 N.Y.S.2d at 61 (insurer's investigation will excuse delay where prompt, diligent, and undertaken in good faith).

status at the time of the January 16, 2019 tender under the terms of the Acceptance Policy because Miranda was not named in the Underlying Action at that point and "there were no allegations being made that Cedillo's alleged injuries were caused in whole or in part by Miranda's acts or omissions."  (Def. Mem. at 21-23.)  Acceptance therefore asserts that "Plaintiffs cannot create coverage where none existed in the first place."  (Id.)

To the extent Acceptance is seeking to negate its duty to defend, Acceptance appears to conflate the duty to indemnify with the duty to defend.  As set forth above,[10] the duty to defend is broader than the duty to indemnify, and will arise "whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy," Healthcare Underwriters Mut. Ins. Co., 779 N.E.2d at 170 (internal quotation marks omitted), or where the insurer "has actual knowledge of facts establishing a reasonable possibility of coverage."  Fitzpatrick, 575 N.E.2d at 93 (citation omitted).

The New York Court of Appeals interprets Section 3420(d) to require the issuance of a disclaimer where a denial of coverage is "predicated upon an exclusion set forth in a policy which, without the exclusion, would provide coverage for the liability in question." Zappone v. Home Ins. Co., 432 N.E.2d 783, 785 (N.Y. 1982).  "If the insurance carrier fails to disclaim coverage in a timely manner, it is precluded from later successfully disclaiming coverage."  NGM Ins. Co. v. Blakley Pumping, Inc., 593 F.3d 150, 154 (2d Cir. 2010) (per curiam) (citing Hartford Ins. Co., 389 N.E.2d at 1062).

As discussed at length above, at the time of the January 2019 tender, there was an open question as to whether Cedillo was an employee of Miranda, rather than DNA, such that Miranda, Acceptance's named insured, could be liable if Cedillo succeeded on his state law

---

[10]    See discussion supra pp. 16-20.

claims against his putative employer, including on a claim for negligence.  See discussion supra pp. 16-21.  These facts were brought to Acceptance's attention by Scottsdale, and raised a reasonable possibility that Cedillo's injuries would be brought within the general coverage terms of the Acceptance Policy.  (Id.)  Under the Additional Insured Endorsement, which extended coverage to additional insureds "only as respects negligent acts or omissions of [Miranda] and only for occurrences, claims or coverage" not otherwise excluded in the Acceptance Policy (Acceptance Policy at 39), OneTeam, DNA, and Nautilus were also entitled to a defense as additional insureds, based on this reasonable probability of coverage.  (Id.)  Acceptance's argument that it was not obligated to make a prompt disclaimer in response to the January 2019 notice is therefore meritless and the exclusions cited in the untimely March 2019 disclaimer do not bar defense coverage of the Plaintiff additional insureds.  See Markevics v. Liberty Mut. Ins. Co., 97 N.Y.2d 646, 648-49 (2001) ("[A] timely disclaimer pursuant to Insurance Law § 3420(d) is required when a claim falls within the coverage terms but is denied based on a policy exclusion").

Request for Conditional Indemnification

Acceptance is, however, correct that a finding regarding Acceptance's duty to indemnify is premature at this time.  (Def. Mem. at 23-25.)  Acceptance's duty to defend was triggered by the existence of a factual question material to coverage, namely, the identity of the entity against which claims in the Underlying Action are properly asserted.  In contrast to the duty to defend, "the duty to pay is determined by the actual basis for the insured's liability to a third person."  Servidone Constr. Corp. v. Security Ins. Co., 64 N.Y.2d 419, 424 (N.Y. 1985) (citation omitted).  Because Acceptance's duty to indemnify "necessarily depends" on which party's negligence, if any, contributed to Cedillo's injuries, and it is not clear to the Court, as of

the date of this Memorandum Opinion and Order, that this issue has been resolved in the

Underlying Action, a declaratory judgment as to the duty to indemnify would be premature at

this stage.  See Am. Auto. Ins. Co. v. Sec. Income Planners & Co., LLC, 847 F. Supp. 2d 454,

465 (E.D.N.Y. 2012) ("An action to declare the insurer's duty to indemnify is premature and

does not lie . . . where the issues of indemnification and coverage hinge on facts which will

necessarily be decided in that underlying action.").  Plaintiffs' request for a declaration of

conditional indemnity is therefore denied, without prejudice.

Plaintiffs' Requested Relief

      In sum, because (1) Acceptance's duty to defend has been triggered; (2)

Acceptance is precluded from relying on exclusions within the Policy because of its untimely

disclaimer as to OneTeam, DNA, and Nautilus; and (3) Acceptance does not dispute that its

Policy requires coverage on a primary and non-contributory basis where coverage is implicated

(Def. Mem. at 7 (characterizing additional insured endorsement as "Primary and

Noncontributory")), OneTeam, DNA, and Nautilus are entitled to coverage and reimbursement

of defense costs for the Underlying Action.  Titan Indus. Servs. Corp v. Navigators Ins. Co., 203

N.Y.S.3d 267, 270 (N.Y. App. Div., 1st Dep't 2024); United Parcel Serv. v. Lexington Ins. Grp.,

983 F. Supp. 2d 258, 267-68 (S.D.N.Y. 2013).  Plaintiffs are not, however, entitled to conditional

indemnification at this time for the reasons discussed in the preceding section.

      Plaintiffs have not submitted invoices for defense costs and litigation expenses as

to OneTeam, DNA, and Nautilus, nor have parties briefed the extent to which Scottsdale is

entitled to defense costs in the event Acceptance is found liable to OneTeam, DNA, and

Nautilus.  (See Def. Mem. at 15 ("Scottsdale is not entitled to any protection under Insurance

Law § 3420(d) and . . . the exclusions [cited in Acceptance's March 2019 disclaimer letter] bar

coverage for the Underlying Action."); Reply Mem. at 15 (Acceptance is required to defend . . .
One Team, Nautilus and DNA on a primary and non-contributory basis and provide
reimbursement of defense costs with interest." (emphasis added))); see also Bovis, 27 A.D.3d at
59-60 (holding Section 3420(d) does not apply to requests for contribution and indemnity
between insurers).  Accordingly, a specific award of damages cannot be made at this time, and
the issue is better addressed through separate renewed motion practice and briefing on damages.
(See Pls. Mem. at 23 (requesting a framed-issue hearing to determine amount of costs to be
imposed upon Acceptance for breaching its duty to defend).)  Plaintiffs are therefore entitled at
this point as a matter of law only to partial summary judgment on Count One of the Complaint,
i.e., a declaratory judgment as summarized below.

      In view of these outstanding issues, a separate order will follow entry of this
Memorandum Opinion and Order setting forth next steps for resolution of this action.

CONCLUSION

      For the foregoing reasons, Plaintiffs' motion for summary judgment is granted in
part as to Count One of the Complaint.  As to Count One, the Court hereby declares that: (1) As
a result of Acceptance's untimely disclaimer, OneTeam, Nautilus, and DNA are entitled to
defense in the Underlying Action on a primary and non-contributory basis under the Acceptance
Policy; and (2) OneTeam, Nautilus, and DNA are entitled to defense costs reasonably incurred in
defending the Underlying Action, in an amount to be determined following additional renewed

motion practice and briefing.  Plaintiffs' motion for summary judgment is denied in all other respects.

This Memorandum Opinion and Order resolves docket entry no. 72.


SO ORDERED.

Dated: New York, New York
        September 12, 2025

/s/ Laura Taylor Swain
_____
LAURA TAYLOR SWAIN
Chief United States District Judge